IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**GINA M. HARDMAN**,

        Plaintiff

        v.

**MICHAEL J. ASTRUE**,
**Commissioner, Social Security Administration**,

        Defendant.

CV 09-931-MO

OPINION AND ORDER

**MOSMAN, J.,**

    Plaintiff Gina Hardman challenges the Commissioner's decision finding that her disability, under Title II of the Social Security Act, has ended. The Court has jurisdiction under 42 U.S.C. § 405(g).

    I review the Commissioner's decision to ensure the Commissioner applied proper legal standards and that his findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). For the reasons stated below, I AFFIRM the Commissioner's decision.

**PROCEDURAL BACKGROUND**

    On March 26, 2004, the Commissioner found Ms. Hardman disabled under Title II of the

Social Security Act, as of September 30, 2002. AR 18.[1] In January 2008, the Commissioner determined that Ms. Hardman's disability had ended, based on a routine continuing disability review. AR 18, 36; *see* 20 C.F.R. § 404.1594(a). After the Commissioner denied Ms. Hardman's appeals, AR 150-62, an Administrative Law Judge ("ALJ") held a hearing on October 17, 2008. AR 18, 300. On December 16, 2008, the ALJ issued a decision finding that Ms. Hardman's disability ended as of January 22, 2008. AR 18, 21, 24-25. The Commissioner's decision became final when review was denied on June 12, 2009 (*see* Comp. (#1) ¶ 4), and Ms. Hardman timely appealed to this Court.

## STANDARD OF REVIEW

A claimant for Social Security disability benefits typically bears the burden to prove disability. *Iida v. Heckler*, 705 F.2d 363, 365 (9th Cir. 1983).

> Once a claimant has been found to be disabled, however, a presumption of continuing disability arises in her favor. *Murray v. Heckler*, 722 F.2d 499, 500 (9th Cir. 1983). The Secretary then bears the burden of producing evidence sufficient to rebut this presumption of continuing disability. *Id.* This evidence . . . is reviewed under the "substantial evidence" standard. [*Id.*]

*Bellamy v. Sec'y of Health & Human Servs.*, 755 F.2d 1380, 1381 (9th Cir. 1985). Substantial evidence means more than a mere scintilla, but less than a preponderance. *Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003). It is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).

## THE ALJ'S FINDINGS

The ALJ made her decision based upon the eight-step sequential process established by

---

[1] Citations to "AR" refer to indicated pages in the official transcript of the administrative record filed by the Commissioner's on December 9, 2009 (#10).

the Commissioner to terminate benefits. *See* 20 C.F.R. § 404.1594(f)(1)-(8). This process for continuing disability evaluation is similar to the five-step sequential process used to evaluate initial claims, with the additional issue of whether medical improvement has occurred. At step one, the ALJ found that Ms. Hardman had not engaged in substantial gainful activity through January 22, 2008. AR 20. At step two, the ALJ found that as of January 22, 2008, Ms. Hardman continued to have rheumatoid arthritis, did not have any other impairments, and that her impairment did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 20. At step three, the ALJ found that Ms. Hardman showed medical improvement in her impairment as of January 22, 2008, in relation to the comparison point decision ("CPD") of March 26, 2004.[2] *See* AR 19, 21.

Following step three, the ALJ determined that Ms. Hardman has the following residual functional capacity ("RFC"):

> as of January 22, 2008, the claimant had the residual functional capacity to lift and carry less than 10 pounds. She can sit 4 hours out of an 8-hour day. She can stand or walk 4 hours out of an 8-hour day. She can sit, stand and walk at least 30 minutes to 1 hour at a time. She can perform occasional postural activities. She can frequently reach, handle, finger, and feel. She has no environmental, visual, hearing, or speaking limitations.

AR 21.

At step four, the ALJ found that Ms. Hardman's medical improvement was related to her

---

[2] The ALJ used the "most recent favorable medical decision finding that the claimant was disabled" as the CPD. AR 19. At that time, Ms. Hardman had the capacity to: lift 10 pounds occasionally and less than 10 pounds frequently, stand and/or walk 2 out of 8 hours; sit for 6 out of 8 hours; occasionally use hand and foot controls; occasionally reach overhead; occasionally handle and finger. AR 20. She could not climb, work around concentrated exposure to extreme cold or vibration, or be even moderately exposed to hazards. AR 20.

PAGE 3 - OPINION AND ORDER

ability to work because it resulted in an increase in her RFC, as compared to the CPD. AR 23. In light of her step-four finding, the ALJ was not required to make a finding at step five. *See* 20 C.F.R. § 404.1594(f)(5). At step six, the ALJ found that Ms. Hardman's rheumatoid arthritis was a severe impairment. AR 23. At step seven, in light of the new RFC, the ALJ found that Ms. Hardman was still unable to perform any of her past relevant work. AR 23. At step eight, however, the ALJ found that Ms. Hardman could perform jobs that exist in significant numbers in the national economy. AR 24. Accordingly, the ALJ determined that Ms. Hardman's disability had ended as of January 22, 2008. AR 25.

## ANALYSIS

Ms. Hardman disputes the ALJ's findings at steps two, four, six,[3] and eight. Specifically, she argues that the ALJ improperly rejected the opinion of Dr. James Smith. (Pl.'s Br. (#13) 5-11.) She also contends the ALJ improperly rejected her own testimony, and that the hypothetical posed to the vocational expert ("VE") did not reflect all of her limitations. (*Id.* at 11-16.)

**I.     Dr. Smith**

Dr. Smith is Ms. Hardman's treating rheumatologist. AR 20. Accordingly, his medical opinion should be given controlling weight as long as it is well-supported. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996); *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). I note

---

[3] I note that step six was actually resolved in Ms. Hardman's favor, finding that her rheumatoid arthritis was a severe impairment. AR 23. She argues in her briefing that the ALJ failed to consider how her impairments limit her ability to do basic work activities (*see* Pl.'s Br. (#13) 5), but a finding of "severe" impairment necessarily includes a finding that the RFC "shows significant limitation of your ability to do basic work activities." *See* 20 C.F.R. § 404.1594(f)(6). Otherwise, the ALJ would not have proceeded beyond step six and would have found Ms. Hardman not disabled at that step. *See id.*

PAGE 4 - OPINION AND ORDER

initially that the ALJ gave "significant weight" to "[t]he opinion of Dr. Smith concerning the claimant's ability to do specific work-related activities." AR 23. The ALJ gave "little weight," however, to Dr. Smith's opinion "that the claimant is disabled for full-time work." AR 23.

In order to reject an uncontroverted treating physician's opinion, an ALJ must provide clear and convincing reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830. An ALJ may appropriately reject a physician's opinion, however, when the opinion is unsupported by clinical notes or findings. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). In response to a letter from Ms. Hardman's counsel, Dr. Smith opined that his "client meets [the] criteria" of Listing Impairment 14.09(C):

> Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
> 1. Limitation of activities of daily living.
> 2. Limitation in maintaining social functioning.
> 3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

AR 287. Despite counsel's request to "describe the objective medical evidence which supports your conclusion," Dr. Smith's response did not reference any evidence in his treatment notes. *See* AR 286-87. And, as the ALJ noted, an independent examination of Dr. Smith's treatment notes does not reveal such objective medical support. *See* AR 20, 283-84.

The ALJ's conclusion that no objective medical evidence supports Dr. Smith's opinion is supported by substantial evidence. Dr. Smith's treatment notes do not evidence any "repeated manifestations," particularly in light of the fact that he had not examined Ms. Hardman in the recent past. AR 283 (noting that Ms. Hardman's visit was to "reestablish care"). Nor does Ms. Hardman's other treating physician, Dr. Andre Barkhuizen, indicate repeated manifestations.

PAGE 5 - OPINION AND ORDER

Rather, he notes on several occasions that her condition was "stable" (AR 248, 251) and "very well-controlled" (AR 249). Additionally, Dr. Smith appears to conclude that Ms. Hardman shows at least two of the constitutional symptoms or signs as required to meet or medically equal the listing, but he does not describe which symptoms or signs are present. *See* AR 287. His treatment notes show no indication of fever or malaise. AR 287. He noted Ms. Hardman's "recent weight loss and fatigue" (AR 283), but did not indicate that the fatigue was severe.[4] While the ALJ recognized that "she may have experienced some fatigue and weight loss," the ALJ also noted that Ms. Hardman's "ability to work 4 hours a day at the light exertion level is not consistent with severe fatigue." AR 20. The ALJ referenced a five-pound weight loss between August 2007 and September 2008, but also noted Dr. Smith's characterization of Ms. Hardman as "healthy-appearing."[5] AR 20, 284. Ms. Hardman testified at the hearing that her average weight was 98 pounds, while Dr. Smith's treatment notes from the day prior to the hearing show Ms. Hardman's weight at 96 pounds.

Dr. Smith also appears to contend that Ms. Hardman meets all three of the limitations at the marked level, as indicated by his hatch marks next to all three on the letter sent by Ms. Hardman's counsel. *See* AR 287. Again, however, he does not indicate what objective medical

---

[4] Ms. Hardman does not point to, nor do I find, anything in the record from other physicians that demonstrate two of the four listed symptoms. While at least one other doctor notes her fatigue, it is not described as severe. AR 199. Additionally, Dr. Barkhuizen did not mention fatigue at all in five separate visits between 2006 and 2007. *See* AR 202-09.

[5] Although Ms. Hardman insists the record does not contain a statement that she is healthy appearing, and therefore the ALJ's reliance on such a statement was in error, I direct her to Dr. Smith's treatment notes, which describe her as a "[s]lim, healthy-appearing person." (*See* Pl.'s Br. (#13) 9; AR 284.)

evidence supports those limitations, and in fact makes no reference to any of the limitations in his treatment notes. *See* AR 283-84. Dr. Smith notes that Ms. Hardman works part time as a barista, but does not indicate any limitations. AR 284. Similarly, the ALJ pointed out that Ms. Hardman "has been able to successfully perform a part-time, light exertion job [at Starbucks] requiring public contact, reflecting less than marked limitations in daily activities, social functioning, and ability to complete tasks timely." AR 20. I therefore find that the ALJ's decision to give less than controlling weight to Dr. Smith's opinion regarding whether Ms. Hardman's impairment meets the 14.09(c) Listing because it is not consistent with the treatment record is supported by substantial evidence.

The ALJ also described that she gave little weight to Dr. Smith's opinion that Ms. Hardman is "disabled" under Title II and unable to perform "full-time work." *See* AR 23, 284. Such an opinion "involves vocational issues for which [Dr. Smith] has no expertise." AR 23. Rather, in order to qualify for disability benefits, "a claimant must satisfy both the medical *and* the vocational components to the statutory definition of 'disabled.'" *Frost v. Barnhart*, 314 F.3d 359, 365 (9th Cir. 2002) (emphasis added).

Finally, despite the little weight given to Dr. Smith's conclusion that Ms. Hardman "meets [the] criteria" of Listing Impairment 14.09(C) and is "disabled" (AR 284), the ALJ afforded significant weight to Dr. Smith's medical source statement. *See* AR 23, 288-91. As described in further detail below, the ALJ used the precise limitations described in Dr. Smith's medical source statement to pose a hypothetical to the VE at the hearing.

PAGE 7 - OPINION AND ORDER

II.    **Ms. Hardman's Testimony**

Ms. Hardman contends that the ALJ failed to provide clear and convincing reasons to reject or partially reject her statements regarding the intensity, persistence, and limiting effects of her symptoms. Upon review, however, I find that the ALJ cited to substantial evidence in the record that detracted from Ms. Hardman's description of the extent of her symptoms. The ALJ described the various doctors' observations that Ms. Hardman's rheumatoid arthritis was well-controlled, often with minimal or no morning stiffness and without evidence of synovitis, she could tolerate the successful drug therapy without side effects, and she had regained full range-of-motion in her wrists, elbows, shoulders, hips, knees, and ankles. *See* AR 22, 190, 202-09, 248; *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1039-40 (9th Cir. 2008) (positive response to treatment undermines claim of disabling symptoms); *Warre v. Comm'r Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (effectively controlled impairment is not disabling for purpose of social security analysis). Testimony contradicting the medical record provides "a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008).

The ALJ also determined that the evidence of Ms. Hardman's daily activities was inconsistent with her statements regarding the severity and extent of her symptoms. AR 22; *see also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (noting that an ALJ may properly consider activities inconsistent with alleged symptoms in assessing credibility). In particular, the ALJ discussed Ms. Hardman's ability to maintain a part-time, light-exertion job as a barista at Starbucks, working four hours a day. AR 21-22. The ALJ determined that the severity of Ms.

Hardman's symptoms, especially her claims of fatigue and pain, may have been partially credible, but the extent of her symptoms after "working more than 4 hours in her *current* job . . . does not establish an inability to sustain an 8-hour work day in *other* types of work." AR 22 (emphasis added).[6] Even in her current job, she "does very well" while at work—which includes customer interaction, occasionally making drinks, cashiering, stocking pastries, and standing for long periods—but experiences pain and fatigue following the "long strenuous hours." *See* AR 22, 189. Additionally, the ALJ discussed Ms. Hardman's ability to make a simple dinner, perform some light household tasks, play bingo, and generally "lead an active lifestyle" despite the "limitations related to her arthritic pain." AR 22. In sum, I find that the ALJ provided clear and convincing reasons, supported by substantial evidence in the record, to give less weight to Ms. Hardman's statements regarding the severity of her symptoms to the extent they are inconsistent with the RFC assessment that Ms. Hardman can perform sedentary work.

### III.     Vocational Expert Hypothetical

Ms. Hardman finally claims the ALJ's hypothetical posed to the VE "did not reflect all the limitations posed by Dr. Smith or the other treating physicians." (Pl.'s Br. (#13) 15.) She primarily argues "[t]he ALJ did not consider any limitations for fingering, reaching, handling, or feeling." (*Id.*)  The ALJ did, however, adopt Dr. Smith's limitations regarding Ms. Hardman's manipulative limitations. AR 23, 290. In his medical source statement, Dr. Smith determined that all four of the manipulative functions listed were "limited," as opposed to "unlimited," as a result of Ms. Hardman's impairment. AR 290. In describing the effect of those limitations, Dr. Smith

---

[6] As described in the ALJ's opinion, Ms. Hardman's work at Starbucks would be classified as light, while the RFC assessment contemplates sedentary work.

determined that Ms. Hardman could "frequently" reach, handle, finger, and feel—this as opposed to performing these manipulations either "constantly" or "occasionally." *Id.* Contrary to Ms. Hardman's assertion, the ALJ included Dr. Smith's precise limitations in her RFC assessment. AR 23 (describing that Ms. Hardman "can frequently reach, handle, finger and feel").

Ms. Hardman also contends that the ALJ erred by not including an environmental limitation that limits her exposure to cold temperatures. The ALJ, however, placed great weight on the medical source statement from Ms. Hardman's treating physician, Dr. Smith, who determined that she did not have any environmental limitations, including those related to temperature. AR 23, 291. The absence of any environmental limitations in the RFC is therefore supported by substantial evidence, and the ALJ did not err in her assessment.

## CONCLUSION

The Commissioner's decision that Ms. Hardman is no longer disabled, as of January 22, 2008, and is no longer entitled to benefits under Title II of the Social Security Act is based upon correct legal standards and supported by substantial evidence. Therefore, the Commissioner's decision is AFFIRMED and Ms. Hardman's appeal is DISMISSED.

IT IS SO ORDERED.

Dated this   10th   day of August, 2010.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge